1  KARLA KRAFT, State Bar No. 205530
     kkraft@sycr.com
2  KATIE BEAUDIN, State Bar No. 306402
     kbeaudin@sycr.com
3  STRADLING YOCCA CARLSON & RAUTH
   A PROFESSIONAL CORPORATION
4  660 Newport Center Drive, Suite 1600
   Newport Beach, CA 92660-6422
5  Telephone:  (949) 725-4000
   Facsimile:  (949) 725-4100
6
7  Attorneys for Defendants
   Quality Built, LLC, and
   Gallant Capital Partners, LLC
8

9                    **UNITED STATES DISTRICT COURT**

10                  **SOUTHERN DISTRICT OF CALIFORNIA**

11  EI CORPORATION, INC., a Nevada        CASE NO. 3:20-cv-01454-WQH-LL
    corporation,
                                          Hon. William Q. Hayes
12
              Plaintiff,                  **DEFENDANTS QUALITY BUILT,
13                                        LLC AND GALLANT CAPITAL
              vs.                         PARTNERS, LLC'S
14                                        MEMORANDUM OF POINTS AND
    GALLANT CAPITAL PARTNERS,             AUTHORITIES IN SUPPORT OF
15  LLC, a Delaware limited liability     MOTION TO DISMISS
    company; QUALITY BUILT, LLC, a        PLAINTIFF'S FIRST AMENDED
16  Delaware limited liability company;   COMPLAINT**
    and JOHN GILLETT, an individual,
17                                        **NO ORAL ARGUMENT UNLESS
              Defendants.                 REQUESTED BY THE COURT**
18
19                                        Hearing Date: _November 30, 2020
20
21                                        Complaint Filed:  June 24, 2020
22
23
24
25
26
27
28

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................... 1

II.   FACTUAL BACKGROUND ................................................... 3

III.  ARGUMENT .......................................................................... 5

    A.    Legal Standard ................................................................ 5

    B.    Plaintiff Lumps Quality Built and Gallant Together Such That It Is Indistinguishable Who Allegedly Committed What Act ............. 5

    C.    Plaintiff's Breach of Contract Cause of Action Fails ........................ 6

        1.    Quality Built Is Not A Party To The Contract ........................ 7

        2.    Plaintiff Does Not Allege A Breach By Quality Built ............. 8

        3.    Plaintiff Does Not Allege a Breach by Gallant ....................... 10

    D.    Plaintiff's Breach of Implied Covenant Of Good Faith And Fair Dealing Cause Of Action Fails ............. 11

    E.    Plaintiff's Misappropriation of Trade Secrets Claims Fail............... 12

        1.    Plaintiff Does Not Allege A Trade Secret ............................... 13

        2.    Plaintiff Does Not Allege Misappropriation ........................... 16

        3.    Plaintiff Does Not Allege Any Specific Misappropriation By Gallant......... 17

    F.    Plaintiff's Ninth Cause of Action For Tortious Interference With Contractual Relations Fails......... 18

        1.    Letters Of Intent Are Not Valid Contracts ............................. 18

        2.    Plaintiff Does Not Allege An Independently Wrongful Act......... 19

        3.    The Allegations Are Duplicative Of The First Cause Of Action For Breach Of Contract ............. 20

    G.    Plaintiff's Intentional Interference With Prospective Economic Advantage Claim Fails......... 20

        1.    Plaintiff Does Not Allege An Independently Wrongful Act......... 21

        2.    The Allegations Are Duplicative Of The First Cause Of Action For Breach Of Contract ............. 21

    H.    Plaintiff's Eleventh Cause of Action for Tortious Interference

-ii-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4830-1007-6366v8/105544-0004

With Contractual Relations Claim Fails ............................................. 22

1.   This Tortious Interference Claim Is Preempted by NUTSA ............................................................................. 23

2.   The Remainder Of This Claim Is Duplicative Of Plaintiff's First Cause Of Action For Breach Of Contract ...... 23

3.   This Claim Fails As To Gallant Because There Is No Independent Wrongful Act Alleged As To Gallant ................. 24

I.   Because All Claims Fail As To Quality Built And Gallant, The Claim For Injunctive Relief Fails ....................................................... 24

IV.  CONCLUSION ................................................................................. 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-

TABLE OF CONTENTS

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ............................................................ 18

*Alta Devices, Inc. v. LG Elecs., Inc.*,
    343 F. Supp. 3d 868 (N.D. Cal. 2018) ........................................................ 12, 13

*Ansara v. Maldonado*,
    No. 2:19-cv-01394-GMN-VCF, 2020 U.S. Dist. LEXIS 81061 (D.
    Nev. May 7, 2020) .............................................................................................. 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................... 5, 9, 16, 17

*Azco Biotech, Inc. v. Qiagen*,
    No. 12-CV-2599 BEN (DHB), 2013 U.S. Dist. LEXIS 119118
    (S.D. Cal. Aug. 19, 2013) ...................................................... 20, 22, 24

*Beck v. American Health Group Int'l, Inc.*,
    211 Cal. App. 3d 1555 (1989) ......................................................... 18

*Becton, Dickinson & Co. v. Cytek Biosciences Inc.*,
    No. 18-cv-00933-MMC, 2018 U.S. Dist. LEXIS 85121 (N.D. Cal.
    May 21, 2018) .................................................................................. 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................. 5, 16

*Brown v. Adidas, Int.*,
    938 F. Supp. 628 (S.D. Cal. 1996) ........................................... 17

*Bustamante v. Intuit, Inc.*,
    141 Cal. App. 4th 199 (2006) ...................................................... 18

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*,
    No. 15-cv-02177-SI, 2017 U.S. Dist. LEXIS 62109 (N.D. Cal.
    Apr. 24, 2017) .................................................................................. 16

*Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*,
    114 Nev. 1304 (Nev. 1998) ......................................................... 22

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-

4830-1007-6366v8/105544-0004

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
   No. 19:cv-05611-PJH, 2020 U.S. Dist. LEXIS 16368 (N.D. Cal.
   Jan. 31, 2020)......................................................................................13

*Founder Starcoin, Inc. v. Launch Labs, Inc.*,
   No. 18- CV-972 JLS (MDD), 2018 U.S. Dist. LEXIS 113737,
   2018 WL 3343790 (S.D. Cal. July 9, 2018)..........................................14

*Frantz v. Johnson*,
   999 P.2d 351 (Nev. 2000)...............................................................12, 15

*Gerber v. Enter. Prods. Hldgs., LLC*,
   67 A.3d 400 (Del. 2013), overruled on other grounds by *Winshall
   v. Viacom Intern., Inc.*, 76 A.3d 808 (Del. 2013)...........................11, 12

*Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp.*,
   No. 3:11-cv-00793-RCJ-VPC, 2012 U.S. Dist. LEXIS 126550 (D.
   Nev. Sep. 6, 2012) ..............................................................................23

*Hamilton v. Bank of Blue Valley*,
   746 F. Supp. 2d 1160 (E.D. Cal. 2010) ...............................................24

*Imax Corp. v. Cinema Techs., Inc.*,
   152 F.3d 1161 (9th Cir. 1998) .............................................................14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
   9 Cal. 5th 1130, 1148 (2020)...............................................................19

*J.J. Indus., LLC v. Bennett*,
   71 P.3d 1264 (Nev. 2003).....................................................................23

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*,
   115 Cal. App. 4th 168 (2004).................................................20, 22, 24

*Khoury v. Maly's of California, Inc.*,
   14 Cal. App. 4th 612 (1993).................................................................22

*Klohs v. Wells Fargo Bank, N.A.*,
   901 F. Supp. 2d 1253 (D. Haw. 2012) ................................................17

*Korea Supply Company v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134, 1157–58 (2003).......................................................24

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-v-
TABLE OF AUTHORITIES
4830-1007-6366v8/105544-0004

*Long v. Yomes*,
    No. 11-00136 ACK-KSC, 2011 U.S. Dist. LEXIS 106988 (D.
    Haw. Sep. 20, 2011) .................................................................................. 17

*Loop AI Labs Inc. v. Gatti*,
    195 F. Supp. 3d 1107 (N.D. Cal. July 6, 2016) ...................................... 13

*Nationwide Emerging Managers, LLC v. Northpointe Hldgs., LLC*,
    112 A.3d 878 (Del. 2015) ........................................................................ 11

*Nemec v. Shrader*,
    991 A.2d 1120 (Del. 2010) ...................................................................... 11

*Nestle USA, Inc.*,
    LA CV16-07519 JAK (AFMx), 2017 U.S. Dist. LEXIS 136557,
    2017 WL 3267665 ............................................................................ 21, 24

*O'Leary v. Telecom Res. Serv., LLC*,
    No. 10C-03-108-JOH, 2011 Del. Super. LEXIS 36 (Super. Ct. Jan.
    14, 2011) ..................................................................................................... 7

*Osram Sylvania Inc. v. Townsend Ventures, LLC*,
    2013 Del. Ch. LEXIS 281, 2013 WL 6199554 (Del. Ch. Nov. 19,
    2013) ......................................................................................................... 12

*Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq.,
    LLC*,
    202 A.3d 482 (Del. 2019) ........................................................................ 11

*PMC, Inc. v. Saban Entertainment, Inc.*,
    45 Cal.App.4th 579 (1996) ...................................................................... 19

*Power Integrations, Inc. v. De Lara*,
    No. 20-cv-410-MMA (MSB), 2020 U.S. Dist. LEXIS 52724 (S.D.
    Cal. Mar. 26, 2020) .................................................................................. 16

*Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ............................................................... 18, 21, 23

*Rennick v. O.P.T.I.O.N. Care, Inc.*,
    77 F.3d 309 (9th Cir. 1996) ..................................................................... 18

*Shell Oil Co. v. Richter*,
    52 Cal. App. 2d 164 (1942) ..................................................................... 24

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-vi-
TABLE OF AUTHORITIES
4830-1007-6366v8/105544-0004

*Silicon Knights v. Crystal Dynamics*,
983 F. Supp. 1303 (N.D. Cal.1997)................................................22

*Solis v. City of Fresno*,
No. 1:11-CV-00053 AWI GSA, 2012 U.S. Dist. LEXIS 33548 (E.D. Cal. Mar. 12, 2012) ................................................17

*Solow v. Aspect Res., LLC*,
No. 20397, 2004 Del. Ch. LEXIS 151 (Del. Ch. Oct. 19, 2004) ....................7

*Space Data Corp. v. X*,
No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571 (N.D. Cal. Feb. 16, 2017)................................................12, 16, 17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)................................................9

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011)................................................5

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998)................................................9

*Stoffwechselforschung GmbH v. ProSciento, Inc.*,
No. 16cv1549-LAB (BLM), 2017 U.S. Dist. LEXIS 49738 (S.D. Cal. Mar. 31, 2017)................................................15

*United States ex rel. Swoben v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016)................................................6

*Turbay v. Bank of Am., N.A.*,
No. 2:12-CV-1367 JCM (PAL), 2013 U.S. Dist. LEXIS 36969 (D. Nev. Mar. 18, 2013) ................................................25

*United States v. Corinthian Colleges*,
655 F.3d 984 (9th Cir. 2011)................................................6

*Vendavo, Inc. v. Price f(x) AG*,
No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS 48637 (N.D. Cal. Mar. 23, 2018) ................................................6, 14, 15

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*,
840 A.2d 606 (Del. 2003)................................................7

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4830-1007-6366v8/105544-0004

*Wallace v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) .......................................................................7

*X6D Ltd. v. Li-Tek Corps. Co.*,
No. 10-CV-2327-GHK-PJW, 2012 WL 12952726 (C.D. Cal. Aug.
27, 2012) ..........................................................................................................14

*Zoom Imaging Sols., Inc. v. Roe*,
No. 2:19-cv-01544-WBS-KJN, 2019 U.S. Dist. LEXIS 195374
(E.D. Cal. Nov. 8, 2019) ...................................................................................13

**Statutes**

Defend Trade Secrets Act ...................................................................................2

Federal Defend Trade Secrets Act ....................................................................12

Nev. Rev. Stat. § 600A.090(1) ..........................................................................23

Nevada Trade Secrets Act ...................................................................................2

Nevada Uniform Trade Secrets Act ...................................................................12

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-viii-
TABLE OF AUTHORITIES

4830-1007-6366v8/105544-0004

1                   **MEMORANDUM OF POINTS AND AUTHORITIES**

2 **I.    INTRODUCTION**

3        This lawsuit was filed over four months ago.  Since then, plaintiff Ei

4 Corporation, Inc. ("Plaintiff") moved for a temporary restraining order and a

5 preliminary injunction, resulting in more than 200 pages of briefing and 350 pages

6 of sworn testimony and related evidence.  Defendants Gallant Capital Partners,

7 LLC ("Gallant") and Quality Built, LLC ("Quality Built") moved to dismiss the

8 original Complaint, explaining in detail the deficiencies they found in each cause

9 of action.  Moreover, throughout the last few months, Plaintiff repeatedly

10 contended that it frequently was learning of new alleged violations by the

11 defendants.  Yet, after all of that briefing, and all of that testimony, and all of the

12 assertions of wrongful conduct, the First Amended Complaint ("FAC") *still* does

13 not allege a valid cause of action against Gallant or Quality Built.  This Motion

14 describes the continued failures of each of the claims, and requests that the FAC be

15 dismissed with prejudice as to Gallant and Quality Built because, if a cause of

16 action cannot properly be stated by now, it is not possible to present a valid claim.

17        At the outset, a summary of the underlying facts may be helpful:  Plaintiff

18 was seeking a potential acquirer to purchase Plaintiff.  Gallant was interested in

19 acquiring Plaintiff, and Gallant and Plaintiff signed a non-disclosure agreement

20 and commenced a diligence process.  Gallant made a purchase offer that Plaintiff

21 rejected, and negotiations ended.  Shortly thereafter, Plaintiff fired its longtime

22 employee, defendant John Gillett ("Gillett"), who subsequently accepted

23 employment with Plaintiff's longtime competitor, Quality Built.  Other employees

24 of Plaintiff variously were fired or were dissatisfied with their work at Plaintiff,

25 sought alternative employment, and ultimately also were hired by Quality Built.

26 Plaintiff regretted ending negotiations with Gallant and terminating the

27 employment of Gillett and others, and was concerned about Quality Built's

28 increasingly strong position in the market.  This lawsuit is the result of that regret.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-
MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

1    The original Complaint did not contain a viable cause of action, for the

2    reasons detailed in Gallant's and Quality Built's original motion to dismiss.

3    Plaintiff filed the FAC in lieu of opposing the original motion.  As the redline of

4    the FAC submitted herewith shows, the FAC includes additional paragraphs and

5    additional allegations.  However, while these new sections are lengthy, they are not

6    substantively different from what was already before this court, and do not contain

7    allegations that are legally sufficient to support a cause of action.

8    One particularly notable concern is that Plaintiff continues to conflate

9    Quality Built and Gallant, likely in an attempt to hold Quality Built to the terms of

10    a contract to which only Gallant is a party.  The case law is clear that a motion to

11    dismiss shall be granted when a party does not specify the individual actions taken

12    by individual defendants that entitle a plaintiff to relief.  Plaintiff's failure to

13    attribute actions to either Quality Built or Gallant is grounds alone for granting this

14    motion to dismiss in its entirety.

15    The FAC contains eight causes of action[1] against Gallant and Quality Built

16    for (1) breach of contract, (2) breach of the implied covenant of good faith and fair

17    dealing, (5) misappropriation of trade secrets (Defend Trade Secrets Act), (6)

18    misappropriation of trade secrets (Nevada Trade Secrets Act), (9) tortious

19    interference with contractual relations (with an LOI), (10) tortious interference

20    with prospective economic advantage, (11) tortious interference with contractual

21    relations (with Gillett's employment agreement), and (13) injunctive relief.  The

22    reasons that each of these causes of action fail are detailed herein.  Gallant and

23    Quality Built respectfully request that each of these claims, and thus the FAC, be

24    dismissed as to both of them.  They further request that such dismissal be with

25    prejudice, as further amendment is futile.

26

27

28

---

[1] The FAC asserts 13 claims in total, but not all are brought against Gallant and
Quality Built. The numbers used in this summary tie to the numbers of the claims
asserted against these defendants.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-
MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

## II.    FACTUAL BACKGROUND

During 2019, Plaintiff began exploring a potential acquisition or recapitalization.  (FAC ¶ 22.)  On October 18, 2019, Plaintiff and Gallant entered into a Confidentiality and Nondisclosure Agreement (the "NDA"), for the purpose of exchanging documents and information in connection with a potential transaction.  (FAC ¶ 23.)  The NDA provided in relevant part that Gallant would not solicit for employment employees of Plaintiff:

> Until the earlier of (a) the date a Potential Transaction is consummated between the parties, or (b) eighteen (18) months following the Effective Date of this Agreement, Recipient shall not solicit for employment or employ any employee of the Company without the prior written consent of the Company. Nothing contained herein shall be construed to restrict Recipient from any general forms of solicitation for employees (including through the use of employment agencies) not specifically directed toward employees of the Company and provided further that Recipient shall not be restricted from hiring any such person who responds to any such general solicitation or who contacts Recipient on his or her own initiative.

(FAC ¶ 24.)  The NDA also provided in relevant part that Gallant would keep confidential certain information provided by Plaintiff during diligence:

> Recipient agrees (a) not to use any Proprietary Information or any information derived therefrom for its own purposes except as required to analyze, negotiate, and effect the Potential Transaction; and (b) not to disclose any Proprietary Information or any information derived therefrom to any person or entity, including any parent, subsidiary, affiliate or potential financing partners of Recipient, except such officers, directors, employees, agents, potential financing partners or advisors of Recipient who: (i) have a need to know the Proprietary Information in order to evaluate the Proprietary Information for the purpose set forth herein; and (ii) to the extent not an employee of Recipient, are required to protect the information as confidential and informed of the terms of this Agreement. Recipient shall be liable for all damages resulting from any breach of this or any such confidentiality agreement by Recipient or Recipient's officers, directors, employees, agents, potential financing partners or advisors.

(FAC Ex. 2.)  Defendant Quality Built is not and was never a party to the NDA. (FAC ¶ 23.)

After signing the NDA, Plaintiff entered into a letter of intent ("LOI") with another company that included an exclusivity period.  (FAC ¶ 28.)  Gallant and Quality Built were not parties to that LOI.  (*Id.*)  The FAC does not allege that

-3-

1    Gallant or Quality Built were aware of the exclusivity provision.

2        During spring 2020, Plaintiff began sharing documents with Gallant

3    pursuant to the NDA.  (FAC ¶ 34.)  On April 15, 2020, following months of

4    negotiations, Gallant allegedly submitted a revised proposal that reduced the

5    purchase price.  (FAC ¶ 36.)  Plaintiff rejected the proposal and terminated

6    negotiations.  (*Id*.)  Shortly thereafter, Plaintiff terminated the employment of

7    defendant John Gillett for cause.  (FAC ¶ 42.)  Gillett was later hired by Quality

8    Built.  (FAC ¶ 43.)  Other former employees of Plaintiff later joined Quality Built.

9    (FAC ¶ 68, 70, 71.)

10        Plaintiff contends that Quality Built is using information Plaintiff gave to

11   Gallant during due diligence to replicate Plaintiff's business plan.  (*See* FAC ¶¶ 77-

12   86.)  Apart from providing a laundry list of documents and information Plaintiff

13   alleges is in Defendants' possession due to being provided during diligence,

14   Plaintiff fails to allege how this "confidential, proprietary, and trade secret

15   information" was purportedly misappropriated.  (FAC ¶¶ 60, 61, 76-86.)  Plaintiff

16   further alleges that Quality Built is using information provided to Gallant during

17   diligence to solicit customers with whom Quality Built has worked, but does not

18   identify the specific information or how it was used.  (FAC ¶¶ 65, 66, 72.)

19        Plaintiff's primary changes in the FAC are at paragraphs 63 through 86

20   which outline the alleged solicitation of Plaintiff's employees and customers, and

21   the alleged misappropriation of trade secrets.  (Declaration of Katie Beaudin,

22   Exhibit A.)  While the changes take up 13 pages, they fail to remedy the

23   fundamental defects of the Complaint.  Among other problems in pleading, those

24   changes do not include any further description of any items on the laundry list of

25   alleged trade secrets, and rely on "information and belief" allegations that directly

26   conflict with sworn testimony and evidence in the record of this case.  (See FAC ¶¶

27   60, 61.)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-
MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

## III.    ARGUMENT

### A.    Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a FAC must be dismissed unless it includes sufficient facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plaintiffs must allege facts that raise more than the "sheer possibility that a defendant has acted unlawfully." *Id*.  Likewise, a complaint that contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will also not suffice. *Id*.

In reviewing a complaint on a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*.  This is intended to prevent the unfair scenario in which an "opposing party [is] subjected to the expense of discovery" by a plaintiff who is "armed with nothing more than conclusions." *Starr v. Baca*, 652 F.3d 1202, 1216–19 (9th Cir. 2011); *Iqbal*, 556 U.S. at 678–79.  Indeed, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted).

### B.    Plaintiff Lumps Quality Built and Gallant Together Such That It Is Indistinguishable Who Allegedly Committed What Act

Throughout the FAC, Plaintiff uses "Gallant and Quality Built" to describe virtually all alleged conduct.  This nomenclature improperly conflates the two defendants, which are separate entities.

A plaintiff must plead a defendant's alleged conduct — or misconduct — with reasonable specificity.  It is a fundamental pleading defect for a complaint to "lump" parties together and fail to distinguish between named defendants. *Ansara v. Maldonado*, No. 2:19-cv-01394-GMN-VCF, 2020 U.S. Dist. LEXIS 81061, at *17 (D. Nev. May 7, 2020) (plaintiff's broad allegations of statutory violations

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-5-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1   against several parties "fail to distinguish between defendants, and thus do not

2   provide fair notice of the claims against them"; citing *Twombly*, 550 U.S. at 555);

3   *Vendavo, Inc. v. Price f(x) AG*, No. 17-cv-06930-RS, 2018 U.S. Dist. LEXIS

4   48637, at *9 (N.D. Cal. Mar. 23, 2018) (dismissing trade secret complaint for "lack

5   of specificity" in pleading theft by related companies); *see also United States ex*

6   *rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016)

7   (distinguishing between "collective allegations" and "failure to allege particular

8   details" for specific defendants in complaint); *United States v. Corinthian*

9   *Colleges*, 655 F.3d 984, 997 (9th Cir. 2011) (in fraud-based action, Rule 9 "does

10  not allow a complaint to merely lump multiple defendants together but requires

11  plaintiffs to differentiate their allegations when suing more than one defendant").

12       The FAC regularly refers to Quality Built and Gallant collectively when

13  alleging specific acts.  (*See, e.g.*, FAC ¶ 61 ("Gallant and Quality Built is in

14  possession of at least the following"); ¶ 90 ("Gallant and Quality Built have

15  violated and continue to violate their obligations under the contractual promises

16  made to Ei under the NDA by, among other things…"); ¶ 98 ("Gallant and Quality

17  Built breached that duty by performing in a manner that is unfaithful to the purpose

18  of the NDA.").)  Neither Quality Built nor Gallant has fair notice of the claims

19  against it because Plaintiff improperly conflates them.  These are separate

20  corporate entities with separate business purposes and separate employees, who

21  can and do act independently from each other, and as described herein have

22  differing obligations (or lack thereof) to Plaintiff.  As made clear by the cases

23  above, this confusion alone supports dismissal of each cause of action against these

24  defendants.

25       **C.    Plaintiff's Breach of Contract Cause of Action Fails**

26       In order to succeed on a breach of contract claim under Delaware law,[2] a

27  _____

28  [2] Delaware law applies because the NDA explicitly provides: "This Agreement
    shall be governed by and construed in accordance with the laws of the State of
    Delaware."  (FAC Ex. 2.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1   plaintiff must demonstrate: (1) the existence of the contract, whether express or

2   implied; (2) the breach of an obligation imposed by that contract; and (3) the

3   resultant damage to the plaintiff.  *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840

4   A.2d 606, 612 (Del. 2003).  Plaintiff's breach of contract claim fails as to Quality

5   Built because Quality Built is not a party to the contract at issue (the NDA), and

6   because the FAC does not allege a breach of the NDA by Quality Built or Gallant.

### 1.    Quality Built Is Not A Party To The Contract

8   As a threshold matter, Plaintiff cannot succeed on its breach of contract

9   claim against Quality Built because *Plaintiff does not have a contract with Quality*

10  *Built*.  Under Delaware contract law, "only a party to a contract may be sued for

11  breach of that contract."  *Wallace v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999).

12  Plaintiff crucially fails to address the fact that there were no contractual promises

13  made to Plaintiff by Quality Built under any agreement.  Quality Built is not a

14  party to the NDA.  The NDA is between Gallant and Plaintiff only.  The language

15  of the NDA does not purport to cover Quality Built.[3]  It is axiomatic that Quality

16  Built cannot breach an agreement to which it is not a party.  *See O'Leary v.*

17  *Telecom Res. Serv., LLC*, No. 10C-03-108-JOH, 2011 Del. Super. LEXIS 36, *20–

18  24 (Super. Ct. Jan. 14, 2011) (dismissing breach of contract claim because

19  defendant was not a party to the contract); *Solow v. Aspect Res., LLC*, No. 20397,

20  2004 Del. Ch. LEXIS 151, *16–17 (Del. Ch. Oct. 19, 2004) (same).

21  Plaintiff contends that prior discussions between the parties indicated their

22  intent for the NDA to apply to Quality Built.  (*See* FAC ¶¶ 54-57.)  This argument

23  is barred by Section 10 of the NDA: "This Agreement supersedes all prior

24  discussions and constitutes the entire agreement between the parties with respect to

25

26  [3] Quality Built is not mentioned anywhere in the NDA.  Not only is Quality Built
    not specifically a signatory to the NDA, but the NDA only refers to the defined

27  "Recipient," which is Gallant.  The definition of "Recipient" does not include any
    parent, subsidiary, affiliate or other related entities.  In fact, the only reference in

28  the NDA to any company other than Gallant is regarding with whom Gallant may
    share confidential information under sections 2 and 3.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
                                        -7-
                    MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

1    the information transmitted hereunder." (FAC Ex. 2.) Further, Plaintiff is a

2    sophisticated business who was represented by an established investment banker; if

3    they wished Quality Built to be bound by the NDA, they could and should have

4    had Quality Built sign the NDA. (*See* FAC ¶¶ 22, 23.)

5                    **2.    Plaintiff Does Not Allege A Breach By Quality Built**

6            Even if the NDA applied to Quality Built (it does not), Plaintiff does not

7    allege a breach of the two provisions it places at issue: Section 7 (non-solicitation

8    of employees) and Section 2 (confidential information).

9            Section 7 of the NDA states that for a period of 18 months Recipient "shall

10   not solicit for employment or employ any employee of the Company." (FAC Ex.

11   2.) It goes on to provide that "[n]othing contained herein shall be construed to

12   restrict Recipient from any general forms of solicitation for employees (including

13   through the use of employment agencies) not specifically directed toward

14   employees of the Company and provided further that Recipient shall not be

15   restricted from hiring any such person who responds to any such general

16   solicitation or who contacts Recipient on his or her own initiative." (*Id.*)

17           Initially, Plaintiff's solicitation allegation focused on Gillett. The FAC

18   admits that Plaintiff terminated Gillett's employment for cause on April 30, 2020.

19   (FAC ¶ 20.) Quality Built announced its hiring of Gillett on May 29, 2020. (FAC

20   ¶ 43.) There is no allegation that Quality Built solicited Gillett in advance of May

21   29, 2020. (*See* FAC generally.) Per the plain language of the FAC, Quality Built

22   neither solicited nor employed an employee of Plaintiff when it hired Gillett.

23           In addition, the FAC now alleges that Quality Built solicited "other Ei

24   employees." These employees include Melissa Jacobsen, Rebecca Heilig, Jun

25   Molina, and Brandon Ung. (FAC ¶¶ 67, 68, 70, 71.) These employees were

26   extensively discussed in relation to Plaintiff's motion for preliminary injunction;

27   yet, inexplicably, the new allegations in the FAC are in direct conflict with sworn

28   testimony that there was in fact no solicitation by Quality Built. (ECF No. 85.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-

MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

This case is unusual in that a volume of sworn testimony already is before the Court on this very issue, before the FAC was filed. The conflict between the pleading of the FAC and that testimony creates a failure in pleading: "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Here, the FAC relies upon unreasonable inferences and unwarranted deductions of fact,[4] and thus lacks plausibility in the face of direct, contrary testimony submitted under penalty of perjury.

Notably, the court need not accept as true any allegations contradicting documents before the court. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("We are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."). In paragraph 71 of the FAC, for example, Plaintiff alleges that Quality Built solicited Mr. Ong and specifically cites to the declaration Mr. Ong submitted in this action on August 12, 2020. That declaration (ECF No. 85-4) makes clear that Mr. Ong was *not* solicited by Quality Built, but instead made a decision to leave Plaintiff and join Quality Built of his own volition. (*See also* FAC ¶ 64 (discussing what "Defendants have admitted in this litigation…").) Other allegations are made on

---

[4] The fact that these individuals became employed by Quality Built does not mean that Quality Built solicited them. Without the direct evidence on file in this case, the allegations in the FAC are tenuous at best as they suggest that simply because these employees left Plaintiff and later joined Quality Built, they must have been solicited. With the testimony in the record, however, the allegations in the FAC become implausible and unreasonable.

MEMORANDUM OF POINTS AND AUTHORITIES

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4830-1007-6366v8/105544-0004

1    "information and belief" in direct contravention of sworn testimony and without

2    attempting to explain why Plaintiff's belief is different than the sworn testimony.

3    In this context, Plaintiff's allegations are not plausible.

4           The other alleged breach of the NDA is section 2, addressing Plaintiff's

5    confidential information.  Again, Quality Built is not a party to the NDA and thus

6    cannot breach.  Further, any allegation that Quality Built is "improperly utilizing

7    Ei's confidential, proprietary, and trade secret information and materials for [its]

8    own benefit" fails.  The FAC makes no attempt to identify what confidential

9    information is specifically at issue, or how it was used or disclosed.  The closest

10   that the FAC comes is in paragraphs 75-86 which outline Plaintiff's trade secret

11   allegations, but none of those actions are sufficient to support – or even relevant to

12   – a claim that Quality Built breached section 2 of the NDA.  As to the trade secret

13   claim, Plaintiff's failure to properly plead this claim is detailed further below.

14   Moreover, the sparse allegations and innuendo related to alleged use of

15   confidential customer information, like the solicitation allegations, are either

16   contradicted by the sworn testimony already provided in this action (*e.g.*, that

17   Quality Built worked with these customers previously (s*ee* ECF No. 85)) or require

18   the Court to make an inappropriate leap of logic that Quality Built might be in

19   possession of information and might be using that information.  (*See* FAC ¶¶ 65,

20   66, 69, 72.)  This is not a plausible pleading.

21          **3.    Plaintiff Does Not Allege A Breach by Gallant**

22          Plaintiff similarly does not allege any breach of the NDA by Gallant.

23   Plaintiff's allegations against Gallant also are based on solicitation of Gillett and

24   other employees, and use of confidential information.

25          With respect to the solicitation allegation, Gallant does not employ Gillett;

26   Quality Built does.  The FAC admits that Quality Built, not Gallant, hired Gillett.

27   (FAC ¶ 64.)  Moreover, there is **no** allegation that Gallant solicited or employed

28   any other employee of Plaintiff.  (FAC ¶¶ 67, 68, 70, 71.)  While Quality Built is

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1    accused of solicitation (without proper basis, as discussed above), the same

2    accusation is not – and cannot – be made against Gallant; among other reasons,

3    Gallant did not hire any former employees of Plaintiff.  In sum, the solicitation

4    allegations are devoid of any action by Gallant.

5        Moreover, there is no allegation that Gallant used any of Plaintiff's

6    confidential information – the few allegations on this issue are direct to Quality

7    Built.  As with Quality Built, the FAC relies upon paragraphs 75-86 of the FAC,

8    which outline Plaintiff's trade secret allegations, to attempt to state a breach of the

9    confidential information provision of the NDA.  But these allegations fail to plead

10   a breach of contract against either defendant, and none of those actions are

11   attributed directly to Gallant beyond an allegation that Gillett spoke with Gallant

12   on April 21, 2019 and allegations that Gallant received materials during diligence.

13   (*See* FAC ¶¶ 64, 86.)  Neither of these allegations is sufficient to support – or even

14   is relevant to – a claim that Gallant breached sections 2 or 3 of the NDA.

15       **D.    Plaintiff's Breach Of Implied Covenant Of Good Faith And Fair**

16           **Dealing Cause Of Action Fails**

17       Plaintiff's breach of implied covenant of good faith and fair dealing claim

18   fails because it is duplicative of its breach of contract claim.

19       The application of the implied covenant is a "cautious enterprise." *Nemec v.*

20   *Shrader*, 991 A.2d 1120, 1125 (Del. 2010).  The implied covenant "does not apply

21   when the contract addresses the conduct at issue." *Nationwide Emerging*

22   *Managers, LLC v. Northpointe Hldgs., LLC*, 112 A.3d 878, 896 (Del. 2015).  It

23   applies "only when the contract is truly silent concerning the matter at hand."

24   *Oxbow Carbon & Minerals Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d

25   482, 507 (Del. 2019) (internal quotation marks omitted).  Because express

26   contractual provisions "always supersede" the implied covenant, an implied

27   covenant claim will not survive a motion to dismiss if it duplicates breach of

28   contract claims.  *Gerber v. Enter. Prods. Hldgs., LLC*, 67 A.3d 400, 419 (Del.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1  2013), overruled on other grounds by *Winshall v. Viacom Intern., Inc.*, 76 A.3d

2  808, 815 n.13 (Del. 2013); *Osram Sylvania Inc. v. Townsend Ventures, LLC*, 2013

3  Del. Ch. LEXIS 281, 2013 WL 6199554, at *17-18 (Del. Ch. Nov. 19, 2013).

4  The good faith and fair dealing cause of action alleges no conduct separate

5  from or in addition to an alleged breach of the NDA.  None at all.  (*See* FAC ¶¶ 95-

6  100.)  At most, the FAC contends that "Gallant and Quality Built breached [an

7  undefined] duty by performing in a matter that is unfaithful to the purpose of the

8  NDA." (*See* FAC ¶ 98.)  This is wholly insufficient to state a good faith and fair

9  dealing claim.

10  Finally, because Quality Built is not a party to the NDA, a claim for breach

11  of the implied covenant as to Quality Built fails for this additional reason.  Only a

12  party to a contract may be sued for breach of the implied covenant that inheres in

13  that contract.  *Gerber*, 67 A.3d at 421 n.53.

14  ### E.    Plaintiff's Misappropriation Of Trade Secrets Claims Fail

15  Plaintiff's misappropriation of trade secrets claim fails under both the

16  federal Defend Trade Secrets Act and the Nevada Uniform Trade Secrets Act

17  because Plaintiff both fails to properly identify a trade secret and fails to allege

18  misappropriation of any trade secret.

19  The elements of a misappropriation of trade secrets claim under Nevada law

20  are:

21  (1) a valuable trade secret; (2) misappropriation of the trade secret
22  through use, disclosure, or nondisclosure of use of the trade secret;
   and (3) the requirement that the misappropriation be wrongful because
   it was made in breach of an express or implied contract or by a party
23  with a duty not to disclose.

24  *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000) (internal footnotes omitted).

25  The elements under the DTSA are similar: a plaintiff must allege that (1) it

26  is the owner of a trade secret; (2) the defendant misappropriated the trade secret;

27  and (3) it was damaged by the defendant's actions.  *Alta Devices, Inc. v. LG Elecs.,*

28  *Inc.*, 343 F. Supp. 3d 868, 877 (N.D. Cal. 2018) (citing *Space Data Corp. v. X*, No.

16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *3 (N.D. Cal. Feb. 16, 2017)).

The *Alta Devices* court noted that a plaintiff must "describe the subject matter of

the trade secret with sufficient particularity to separate it from matters of general

knowledge in the trade or of special persons who are skilled in the trade, and to

permit the defendant to ascertain at least the boundaries within which the secret

lies." *Alta Devices, Inc.*, 343 F. Supp. 3d at 880–81 (citing *Vendavo, Inc*, No. 17-

cv-06930-RS, 2018 U.S. Dist. LEXIS 48637, at *9–10)).

### 1.    Plaintiff Does Not Allege A Trade Secret

The FAC *makes absolutely no changes or additions whatsoever* to its prior,

insufficient attempt to identify any alleged trade secrets at issue.  (*Compare*

Compl. ¶¶ 46, 47 *with* FAC ¶¶ 60, 61.)  Both the original complaint and the FAC

describe the purported trade secrets in terms of the volume of information provided

in diligence ("3 gigabytes of data and 3,422 files labeled 'Confidential'") and then

provide a laundry list of categories of documents contained in that data.  There is

no attempt to describe why any document within any of the categories of

information listed might qualify as a trade secret; of course, qualifying information

as a "trade secret" requires a much different and higher standard than deeming

information to be "confidential."  *See Zoom Imaging Sols., Inc. v. Roe*, No. 2:19-

cv-01544-WBS-KJN, 2019 U.S. Dist. LEXIS 195374, at *13-14 (E.D. Cal. Nov. 8,

2019).  "[A]llegations that set out 'purported trade secrets in broad, categorical

terms' that are merely 'descriptive of the types of information that generally *may*

qualify as protectable trade secrets' are insufficient to state a claim."  *Five Star*

*Gourmet Foods, Inc. v. Fresh Express, Inc.*, No. 19:cv-05611-PJH, 2020 U.S. Dist.

LEXIS 16368, at *19–20 (N.D. Cal. Jan. 31, 2020).  *See also Loop AI Labs Inc. v.*

*Gatti*, 195 F. Supp. 3d 1107, 1116 (N.D. Cal. July 6, 2016) ("[I]dentifying

documents alone would not be an adequate substitution for detailed identification

of the trade secrets therein.").

"A plaintiff seeking relief for misappropriation of trade secrets 'must

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-13-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1  identify the trade secrets and carry the burden of showing that they exist.'"

2  *Founder Starcoin, Inc. v. Launch Labs, Inc.*, No. 18- CV-972 JLS (MDD), 2018

3  U.S. Dist. LEXIS 113737, 2018 WL 3343790, at \*5 (S.D. Cal. July 9, 2018)

4  (quoting *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir.

5  1993)).  "The plaintiff 'should describe the subject matter of the trade secret with

6  sufficient particularity to separate it from matters of general knowledge in the trade

7  or of special knowledge of those persons . . . skilled in the trade.'"  *Imax Corp. v.*

8  *Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quoting *Universal*

9  *Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal.

10  1989).  "Put another way, '[a] plaintiff must do more than just identify a kind of

11  technology and then invite the court to hunt through the details in search of items

12  meeting the statutory definition [of a trade secret].'"  *X6D Ltd. v. Li-Tek Corps.*

13  *Co.*, No. 10-CV-2327-GHK-PJW, 2012 WL 12952726, at \*1 (C.D. Cal. Aug. 27,

14  2012) (quoting *Imax*, 152 F.3d at 1163-64).

15     *Vendavo, Inc. v. Price f(x) AG* is instructive here.  In *Vendavo*, the plaintiff

16  pled that its alleged trade secrets included "source code, customer lists and

17  customer related information, pricing information, vendor lists and related

18  information, marketing plans and strategic business development initiatives,

19  'negative knowhow' learned through the course of research and development, and

20  other information related to the development of its price-optimization software."

21  *Vendavo, Inc.*, 2018 U.S. Dist. LEXIS 48637, at \*6.  The court found this

22  allegation insufficient because, rather than describing any specific trade secrets, the

23  plaintiff merely "set out its purported trade secrets in broad, categorical terms,

24  more descriptive of the types of information that *may* qualify as protectable trade

25  secrets than as any kind of listing of particular trade secrets [the plaintiff] has a

26  basis to believe actually were misappropriated here."  *Id*. at \*9.  Because the

27  complaint only set forth "conclusory and generalized allegations[,]" the court

28  found the allegations insufficient to state a claim for trade secret misappropriation.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-
MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

1 | *Id.* at *10.

2       Here, many of the categories of documents alleged almost certainly cannot

3 | quality as trade secrets as a matter of law:

4 | • Financial statements and balance sheets (FAC ¶¶ 61 (c), (d), (e), (f))

5 | • Copies of "virtually every corporate legal agreement" including "real

6 | estate lease agreements, equipment lease agreements, supplier and

7 | vendor agreements, nondisclosure agreements, software licensing

8 | agreements …" (FAC ¶ 61(i))

9 | • A list of all intellectual property (FAC ¶ 61(k))

10 | • Employment agreements  (FAC ¶ 61(m))

11       The only listed category that potentially could contain trade secret

12 | information is customer information.  However, as described, it is impossible to

13 | discern whether any actual trade secret information might be contained in, for

14 | example, a "list setting forth all of Ei's customer sales annually" or a list of

15 | invoices.  The standard to qualify a customer list as a trade secret is very high and

16 | rarely met, and certainly is not met by the FAC.  *See Frantz v. Johnson*, 116 Nev.

17 | 455, 999 P.2d 351, 359 (Nev. 2000) ("not every customer…list will be protected as

18 | a trade secret").

19       In fact, courts dismiss trade secrets claims where a plaintiff provided

20 | significantly more detail than what Plaintiff provided here.  *See Becton, Dickinson*

21 | *& Co. v. Cytek Biosciences Inc.*, No. 18-cv-00933-MMC, 2018 U.S. Dist. LEXIS

22 | 85121, at *7 (N.D. Cal. May 21, 2018) (allegations of "design review templates,"

23 | "fluidics design files," or "source code files" lacked particularity, especially when

24 | "preceded by the phrases 'such files included' and 'such as'"); *Profil Institut fur*

25 | *Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 16cv1549-LAB (BLM),

26 | 2017 U.S. Dist. LEXIS 49738, at *15 (S.D. Cal. Mar. 31, 2017) (concluding

27 | allegations of "methods and procedures for preparing clinical development plans to

28 | perform clinical studies," "methods and procedures in the design, performance, and

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-
MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

data analysis of clinical studies," "methods and procedures for data management and analysis," and "database design, computer software, and procedures for implementing a database to manage and recruit volunteers for various clinical studies," lacked sufficient particularity); *Space Data*, No. 16-cv-03260-BLF, 2017 U.S. Dist. LEXIS 22571, at *4 ("[A] high-level overview of Space Data's purported trade secrets, such as 'data on the environment in the stratosphere' and 'data on the propagation of radio signals from stratospheric balloon-based transceivers' . . . do[es] not satisfy the Rule 8 pleading requirements.").

Because Plaintiff does not properly allege a trade secret, both trade secret claims fail. *See Power Integrations, Inc. v. De Lara*, No. 20-cv-410-MMA (MSB), 2020 U.S. Dist. LEXIS 52724, *49–51 (S.D. Cal. Mar. 26, 2020) (dismissing misappropriation of trade secrets claim because plaintiff did not identify a specific trade secret at issue).

### 2.    Plaintiff Does Not Allege Misappropriation

"Misappropriation" is defined as "(a) 'acquisition of a trade secret' by a person who knows or should know the secret was improperly acquired or (b) 'disclosure or use of a trade secret of another without express or implied consent.'" *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-cv-02177-SI, 2017 U.S. Dist. LEXIS 62109, at *9 (N.D. Cal. Apr. 24, 2017) (quoting 18 U.S.C. §§ 1839(5)(A), (B)).  Here, Plaintiff utterly fails to allege how any purported trade secrets are being misappropriated by Quality Built or Gallant.

In sum, the allegations are that Plaintiff has performed work for a certain homebuilder client, Quality Built spoke with that client, so Quality Built must be using Plaintiff's information.  The FAC adds a volume of text – pages worth – purporting to address misappropriation.  But there is no substance to these allegations.  Most are based "on information and belief."  (FAC ¶¶ 78-81, 83-86.) "[A]lthough allegations 'upon information and belief' may state a claim after *Iqbal* and *Twombly*, a claim must still be based on factual content that makes liability

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

plausible, and not be 'formulaic recitations of the elements of a cause of action.'"
*Klohs v. Wells Fargo Bank, N.A.*, 901 F. Supp. 2d 1253, 1259 n.2 (D. Haw. 2012)
(quoting *Long v. Yomes*, No. 11-00136 ACK-KSC, 2011 U.S. Dist. LEXIS
106988, at *14 (D. Haw. Sep. 20, 2011)); *see also Solis v. City of Fresno, No.
1:11-CV-00053 AWI GSA, 2012 U.S. Dist. LEXIS 33548, at *22 (E.D. Cal. Mar.
12, 2012)* ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief,
without more, is insufficient to survive a motion to dismiss for failure to state a
claim.").  Sheer speculation – particularly in the face of testimony in the record of
this case – does not adequately plead misappropriation

   The allegation that comes closest to pleading misappropriation is in
paragraph 77 of the FAC, in which it is asserted that Quality Built is
misappropriating "trade secrets" by offering KB Inland "the same deal" as Plaintiff
did.  This still is not sufficient to support a misappropriation claim – both because
no trade secret is identified (in relation to this allegation or otherwise), and because
the allegation itself falls short of minimum pleading requirements.  *See Space
Data*, 2017 U.S. Dist. LEXIS 22571, 2017 WL 5013363, at *2 (failing to support
an inference of improper use with a conclusory allegation that "Defendants have
engaged in other business activity based on [Plaintiff's] confidential trade secret
information, which conflict with their legal obligations to [Plaintiff]").

   In sum, the allegations of the FAC are inadequate to support an inference
that Gallant or Quality Built improperly used a trade secret within the meaning of
the DTSA.  *See Brown v. Adidas, Int.*, 938 F. Supp. 628, 634 (S.D. Cal. 1996)
(dismissing misappropriation of trade secrets claim because plaintiff did not
sufficiently allege that defendant misappropriated his designs).

   **3.**  **Plaintiff Does Not Allege Any Specific Misappropriation By
Gallant**

   Because the Court cannot presume use of trade secret information occurs
simply because Defendants possess it, Plaintiff must satisfy its pleading burden by

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1  showing how improper acquisition, disclosure, or use occurred or is threatened.

2  *See Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1027

3  (E.D. Cal. 2011).  There is no allegation that Gallant misappropriated any alleged

4  trade secret.  The "misappropriation" section of the FAC does not even mention

5  Gallant.  (*See generally* FAC ¶¶ 75-86.)  Because Plaintiff fails to allege any act of

6  misappropriation by Gallant and instead alleges only that Gallant is in possession

7  of alleged trade secrets (that Plaintiff voluntarily provided to it), the trade secret

8  claims fail as to Gallant for this additional reason.

9  **F.    Plaintiff's Ninth Cause Of Action For Tortious Interference With**

10     **Contractual Relations Fails**

11     Plaintiff alleges tortious interference as to an LOI between Plaintiff and

12  another potential buyer of Plaintiff.  This cause of action fails because letters of

13  intent are not enforceable contracts, there is no allegation of an independently

14  wrongful act, and the claim is duplicative of the breach of contract cause of action.

15     The elements of a tortious interference with contractual relations claim are

16  (1) a valid contract between plaintiff and a third party, (2) defendant's knowledge

17  of this contract, (3) defendant's intentional acts designed to induce a breach or

18  disruption of the contractual relationship, (4) actual breach or disruption of the

19  contractual relationship, and (5) resulting damage.  *See Reeves v. Hanlon*, 33 Cal.

20  4th 1140, 1148 (2004).

21     **1.    Letters Of Intent Are Not Enforceable Contracts**

22     Letters of intent are not enforceable contracts.  "An agreement to make an

23  agreement, without more, is not a binding contract."  *Rennick v. O.P.T.I.O.N. Care,*

24  *Inc.*, 77 F.3d 309, 315 (9th Cir. 1996) (citing *Autry v. Republic Productions*, 30

25  Cal. 2d 144 (1947)); *see also Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199,

26  213-14 (2006).  A letter of intent, like the one cited in the FAC, is simply an

27  agreement to agree.  *See Beck v. American Health Group Int'l, Inc.*, 211 Cal. App.

28  3d 1555, 1562 (1989) (unenforceable letter of intent where letter was merely an

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1  "outline of our future agreement").  "[A] cause of action for intentional

2  interference with contract requires an underlying enforceable contract. Where there

3  is no existing, enforceable contract, only a claim for interference with prospective

4  advantage may be pleaded." *PMC, Inc. v. Saban Entertainment, Inc.*, 45

5  Cal.App.4th 579, 601 (1996).  Because a tortious interference with contractual

6  relations claim cannot be based on an unenforceable contract, such as an LOI, this

7  cause of action fails.

8       **2.**      **Plaintiff Does Not Allege An Independently Wrongful Act**

9       "[T]o state a claim for interference with an at-will contract by a third party,

10  the plaintiff must allege that the defendant engaged in an independently wrongful

11  act." *Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1148 (2020).  The

12  Restatement explains: "One's interest in a contract terminable at will is primarily

13  an interest in future relations between the parties, and he has no legal assurance of

14  them. For this reason, an interference with this interest is closely analogous to

15  interference with prospective contractual relations. [Citation.] If the defendant was

16  a competitor regarding the business involved in the contract, his interference with

17  the contract may be not improper." *Id.* at 1145 (quoting Rest.2d Torts, § 766, com.

18  g, pp. 10–11).  The LOI at issue in this cause of action was at will – the FAC

19  alleges the counter-party withdrew the LOI, at will, on March 23, 2020.  (FAC ¶

20  32.)  Thus, Plaintiff must allege an independently wrongful act.

21       However, Plaintiff fails to so allege.  The purported actions here are that

22  "Defendants engaged in wrongful conduct…including but not limited to engaging

23  in multiple and repeated improper communications and exchanging of information

24  during the exclusivity period…and Gallant and Quality Built's solicitation of

25  Gillett during same."  (FAC ¶ 156.)  It is unclear because of the term "Defendants"

26  whether the "improper communications" are attributed to Gillett, Quality Built or

27  Gallant.  However, there can be no allegation that the communications and

28  exchange of information during the alleged LOI exclusivity period constituted a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

wrongful act by Gallant or Quality Built as communications alone are not tortious acts, and Gallant and Quality Built were not bound by an exclusivity period.  (*See* FAC ¶ 156.)

Moreover, as explained in section (III)(C)(2) and (III)(C)(3), neither Gallant nor Quality Built solicited Gillett at any time, let alone during the exclusivity period.  There is no allegation that Quality Built solicited Gillett in advance of his hiring date.  (*See* FAC generally.)  In addition, the FAC admits that Quality Built, not Gallant, hired Gillett.  (FAC ¶ 64.)  Finally, any purported solicitation would not be "wrongful" but for the allegation that solicitation is a breach of the NDA, which is not an independently wrongful act because it is duplicative of the breached contract claim.  (See infra at § III(F)(3).)

### 3.    The Allegations Are Duplicative Of The First Cause Of Action For Breach Of Contract

Even if Gallant or Quality Built had solicited Gillett, which they did not and is not specifically pled in the FAC, this allegation cannot support a tortious interference claim as it is duplicative of the first cause of action.  (*Compare* FAC ¶ 90 ("soliciting for employment and employing Gillett") *with* FAC ¶ 156 ("Gallant and Quality Built's solicitation of Gillett").)  "[A] breach of contract claim cannot be transmuted into tort liability by claiming that the breach interfered with the promisee's business." *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 182 (2004); *see also Azco Biotech, Inc. v. Qiagen*, No. 12-CV-2599 BEN (DHB), 2013 U.S. Dist. LEXIS 119118, at *36 (S.D. Cal. Aug. 19, 2013) (dismissing tortious interference claim because the essential nature of the conduct sounded in contract).

### G.    Plaintiff's Intentional Interference With Prospective Economic Advantage Claim Fails

To plead a claim for intentional interference with prospective economic advantage, a plaintiff must allege (1) an economic relationship between the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the defendant's acts. *Reeves,* 33 Cal. 4th at 1152 n. 6 (citing *Youst v. Longo*, 43 Cal. 3d 64, 71 n. 6, (1987)).

The prospective relationship the FAC pleads is the LOI between Plaintiff and the third party prospective acquirer. Plaintiff fails to plead an intentional act designed to disrupt that relationship that is independent of any contractual wrong. This claim is also duplicative of the tortious interference with contractual relations claim as to the LOI.

### 1.    Plaintiff Does Not Allege An Independently Wrongful Act

In a tortious interference with prospective economic relations claim, there must always be an independently wrongful act alleged. "'A complainant must plead that the defendant engaged in an independently wrongful act' outside of merely interfering with a contract." *Nestle USA, Inc.*, LA CV16-07519 JAK (AFMx), 2017 U.S. Dist. LEXIS 136557, 2017 WL 3267665, at * 14 (quoting *Korea Supply Co.*, 29 Cal. 4th at 1157-58). There is no independently wrongful act alleged here.

The FAC alleges: "Defendants engaged in wrongful conduct…including but not limited to engaging in multiple and repeated improper communications and exchanging of information during the exclusivity period…and Gallant and Quality Built's solicitation of Gillett during same." (FAC ¶ 163.) This allegation is identical to the "act" in Plaintiff's ninth cause of action for interference with the LOI and is insufficient for the same reasons. (*See supra* § (III)(F)(2).)

### 2.    The Allegations Are Duplicative Of The First Cause Of Action For Breach Of Contract

Once again, with respect to the allegation that Gillett or Quality Built's

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

1    solicitation of Gillett was the wrongful act, even if this were true, this is

2    duplicative of the contract claim.  Indeed, "a breach of contract claim cannot be

3    transmuted into tort liability by claiming that the breach interfered with the

4    promisee's business." *JRS Prods., Inc.*, 115 Cal. App. 4th at 182; *see also Azco*

5    *Biotech, Inc.*, No. 12-CV-2599 BEN (DHB), 2013 U.S. Dist. LEXIS 119118, at

6    *36 (dismissing tortious interference claim because the essential nature of the

7    conduct sounded in contract); *Silicon Knights v. Crystal Dynamics*, 983 F. Supp.

8    1303, 1311 (N.D. Cal.1997) (citations omitted) (in California, plaintiff has the

9    burden of proving that the defendant's interference "was wrongful by some

10    measure beyond the fact of interference itself.").

11         In *Khoury v. Maly's of California, Inc*., 14 Cal. App. 4th 612 (1993), a

12    beauty shop filed a complaint against a distributor of hair products for, among

13    various other causes of action, breach of contract and for the intentional

14    interference with advantageous business relationships.  The trial court sustained the

15    distributor's demurrer without leave to amend.  *Id*. at 615.  The Court of Appeal

16    affirmed the judgment as to the intentional interference claim.  *Id*. at 619–20.  The

17    court explained: "The sole alleged conduct of respondent was the breach of

18    contract to supply the JPM products to appellant. The effect on appellant's

19    customers (with whom respondent had no relations) and the damage to appellant's

20    business were simply consequences of breach of contract. … Appellant's third

21    cause of action is simply duplicative of his contract claim." *Id*. at 618.  Such is the

22    situation here.[5]

23    **H.    Plaintiff's Eleventh Cause Of Action For Tortious Interference**

24    **With Contractual Relations Claim Fails**

25         Plaintiff alleges tortious interference as to Gillett's employment agreement.

26    _____

27    [5] Should Plaintiff argue that Nevada law applies, the outcome is the same.  *See*
*Consol. Generator-Nevada, Inc. v. Cummins Engine Co., Inc.*, 114 Nev. 1304,
1311 (Nev. 1998) (outlining the elements of a tortious interference with
28    prospective economic relations claim which are identical to the element under
California law).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-
MEMORANDUM OF POINTS AND AUTHORITIES
4830-1007-6366v8/105544-0004

1    This claim is both preempted by NUTSA and improperly based on the same

2    wrongdoing as the breach of contract cause of action.  The claim also fails as to

3    Gallant because no actions are alleged as to Gallant.

4         Again, the elements of a tortious interference with contractual relations

5    claim are (1) a valid contract between plaintiff and a third party, (2) defendant's

6    knowledge of this contract, (3) defendant's intentional acts designed to induce a

7    breach or disruption of the contractual relationship, (4) actual breach or disruption

8    of the contractual relationship, and (5) resulting damage.  *See Reeves*, 33 Cal. 4th

9    at 1148. [6]

10        **1.      This Tortious Interference Claim Is Preempted by NUTSA**

11        NUTSA "displaces conflicting tort, restitutionary, and other law of this state

12   providing civil remedies for misappropriation of a trade secret."  Nev. Rev. Stat. §

13   600A.090(1).  A tort claim that is based on the alleged misappropriation of trade

14   secrets is therefore preempted.  *Glob. Advanced Metals USA, Inc. v. Kemet Blue*

15   *Powder Corp.*, No. 3:11-cv-00793-RCJ-VPC, 2012 U.S. Dist. LEXIS 126550, at

16   *12 (D. Nev. Sep. 6, 2012).  Here, this cause of action is based on Quality Built

17   and Gallant's alleged assistance of Gillett's use of "confidential information."  (*See*

18   FAC ¶ 170.)  Such purported conduct is duplicative of the misappropriation of

19   trade secrets claims and is therefore preempted.

20        **2.      The Remainder Of This Claim Is Duplicative Of Plaintiff's**

21        **First Cause Of Action For Breach Of Contract**

22        The cause of action is also based on the allegation that Quality Built and

23   Gallant "assist[ed] Gillett in soliciting Ei customers and employees."  (FAC ¶ 170.)

24   This allegation is identical to the allegation in the first cause of action that Quality

25   Built and Gallant breached the NDA by "soliciting for employment and employing

26

27   [6] Should Plaintiff allege that Nevada law applies, the outcome is the same.  *See J.J.*
     *Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (outlining elements of a
28   tortious interference with contractual relations claim under Nevada law which are
     identical to the elements under California law).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1   Gillett and other Ei employees." (FAC ¶ 90.)  Again, "a breach of contract claim

2   cannot be transmuted into tort liability by claiming that the breach interfered with

3   the promisee's business." *JRS Prods.*, 115 Cal. App. 4th at 182; *see also Azco*

4   *Biotech,* 2013 U.S. Dist. LEXIS 119118, at *36 (dismissing tortious interference

5   claim because the essential nature of the conduct sounded in contract).

6           **3.      This Claim Fails As To Gallant Because There Is No**

7                   **Independent Wrongful Act Alleged As To Gallant**

8           The alleged wrongful conduct in this cause of action is "assisting Gillett in

9   soliciting Ei customers and employees and utilizing confidential information in

10  violation of his Employment Agreement." (FAC ¶ 170.)  "'A [complainant] must

11  plead that the defendant engaged in an independently wrongful act' outside of

12  merely interfering with a contract." *Nestle USA, Inc.*, No. LA CV16-07519 JAK

13  (AFMx), 2017 U.S. Dist. LEXIS 136557, at *41 (quoting *Korea Supply Co.*, 29

14  Cal. 4th at 1157–58).  However, other than the lumping together of "Gallant and

15  Quality Built" in paragraph 170 of the FAC, there is no allegation that Gallant

16  engaged in any solicitation.  (*See generally* FAC ¶¶ 65-74.)  Moreover, there is no

17  allegation that Gallant used any confidential information.  (*See generally* FAC ¶¶

18  77-86.)  Because there is no independently wrongful act alleged as to Gallant, this

19  claim fails.

20          **I.      Because All Claims Fail As To Quality Built And Gallant, The**

21                  **Claim For Injunctive Relief Fails**

22          "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause

23  of action must exist before injunctive relief may be granted." *Shell Oil Co. v.*

24  *Richter*, 52 Cal. App. 2d 164, 168 (1942).  In *Hamilton v. Bank of Blue Valley*, 746

25  F. Supp. 2d 1160, 1182 (E.D. Cal. 2010), the court found that because there were

26  no viable claims, plaintiff was not entitled to a remedy of injunctive relief.

27  Because all claims against Quality Built and Gallant fail, the claim for injunctive

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004

1  relief fails.[7]

2  **IV.    CONCLUSION**

3          For these reasons, defendants Quality Built and Gallant each respectfully

4  request that the Court dismiss the FAC and each of the causes of action therein as

5  to each of them.  Defendants request such dismissal be with prejudice;

6  alternatively, Defendants request dismissal without prejudice if the Court believes

7  amendment is possible.

8  DATED:  October 22, 2020              STRADLING YOCCA CARLSON &
                                         RAUTH, P.C.
9

10                                       By:   s/ Katie Beaudin
                                               Karla Kraft,
                                               Katie Beaudin,
11

12                                       Attorneys for Defendants
                                         Quality Built, LLC, and
                                         Gallant Capital Partners, LLC
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  _____
    [7] Should Defendant argue that Nevada law applies, the result would be the same.
    *Turbay v. Bank of Am., N.A.*, No. 2:12-CV-1367 JCM (PAL), 2013 U.S. Dist.
28  LEXIS 36969, at *14 (D. Nev. Mar. 18, 2013) (holding that "[t]here is no cause of
    action for declaratory or injunctive relief—these are remedies, not claims for
    relief" and dismissing injunctive relief claim where other claims were dismissed).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

MEMORANDUM OF POINTS AND AUTHORITIES

4830-1007-6366v8/105544-0004